**Application of RASHBA AND POKART and Marvin Hayutin to quash a Securities and Exchange Commission subpoena duces tecum dated April 5, 1967.**

**No. M18–304.**

United States District Court
S. D. New York.

June 30, 1967.

Shea, Gallop, Climenko & Gould, by Michael Lesch, New York City, for petitioners.

Edward B. Wagner and Arthur F. Matthews, Washington, D. C., for Securities and Exchange Commission.

## OPINION

TYLER, District Judge.

On April 5, 1967, a subpoena duces tecum was served by the Securities and Exchange Commission ("SEC") upon the accounting firm of Rashba and Pokart (hereinafter referred to as "Pokart") returnable on April 17, 1967. The subpoena was subsequently adjourned *sine die*. Petitioners Marvin Hayutin and Pokart have moved for an order quashing the subpoena.[1]

On June 8, 1967 this court heard argument of the motion and conducted an evidentiary hearing at which Marvin Hayutin and Emmanuel Pokart, a partner of the petitioner firm, testified.

From the hearing and argument, it is manifest that the SEC concedes *arguendo* the jurisdiction of this court to resolve this controversy and opposes the application on the merits. Hayutin contends that production of the documents sought by the SEC would violate his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. He also urges that compliance with the subpoena would impinge upon his right to be free of unreasonable searches and seizures as spelled out in the Fourth Amendment to the United States Constitution.

As a practical matter, the concern of Hayutin is clear and understandable. The SEC has commenced investigation of various transactions in the securities of a firm called VTR, Inc. pursuant to Section 20(a) of the Securities Act of 1933, 15 U.S.C. § 77t(a), and Section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(a). Hayutin is one of the subjects of this investigation and indeed, is potentially a defendant in any criminal action which may result therefrom. Moreover, earlier this year, Hayutin was convicted by a jury in this court of a number of substantive violations of the Securities Act of 1933 and one count of conspiracy to violate that Act. On May 5, 1967 Hayutin was sentenced to two and one-half years on each count concurrently; he has filed a notice of appeal from the judgment of conviction. Finally, it is stated by Hayutin without contradiction that the SEC has commenced other criminal investigations than the VTR, Inc. matter in which he is a "target" of possible criminal prosecution.

The original subpoena called for production of two classes of documents: (1) work papers prepared by the Pokart firm based upon certain underlying documents, at least some of which were furnished to that firm by Hayutin, and (2) various underlying documents furnished by Hayutin to the Pokart firm to enable it to prepare his income tax returns. At the hearing on June 8, 1967, however, the SEC represented to the court that it intended to narrow and modify the original subpoena dated April 5, 1965 so as to include only work papers of the Pokart firm prepared at any time during the period from September 1, 1963 through April 5, 1967 for use in preparation of income tax returns of Marvin F. Hayutin or of his brother, Harvey Hayutin, and which pertained to any of the 43 firms and persons listed in the original subpoena. By letter of June 9, 1967, the SEC confirmed this modification to the court.

Although the question may not be entirely free from doubt, I assume that this court has jurisdiction and thus turn to the merits. See Application of Colton, 291 F.2d 487 (2d Cir. 1961). In so doing, I determine that Hayutin's contentions are without substance.

■ Specifically, I find that Marvin Hayutin has been a client of Pokart from 1963 or 1964 to date. Hayutin retained this accountancy firm to assist him in preparing his personal income tax returns. Various working papers, including those sought in the subpoena, were prepared by Pokart in connection with the Hayutin retainer. No agreement or un-

---

1. In fact, Hayutin is the real moving party; Pokart stands ready to abide by the orders of this court after it hears and determines the issues raised by Hayutin.

derstanding to the effect that Hayutin was to acquire title to or right of possession of these working papers was ever discussed or consummated between the parties.

 Apparently anticipating that this court would make such a finding, counsel for petitioners have urged, post-hearing, that Hayutin furnished the various underlying documents to Pokart in confidence. Thus, it is said, a privilege for Pokart's "work product" or work papers based wholly or in part upon such documents has been created in Hayutin's favor. Assuming a distinction between an agreement of ownership and an agreement of confidentiality, I am not persuaded by Hayutin's testimony that any specific agreement of confidentiality was entered into; Emmanuel Pokart did not confirm this in his testimony, and I accept his version as credible. Moreover, the nature of the documents as revealed by the contents of the original subpoena suggests that they were not prepared by Hayutin for the purpose of confidential communication with Pokart. In any event, even if transmittal of confidential underlying documents could be established or implied, it probably would not matter; neither New York nor federal law recognizes an accountant-client privilege, either generally or specifically in respect to the work product of the accountant. United States v. Pizzo, 260 F.Supp. 216, at 221 (S.D.N.Y.1966); see Falsone v. United States, 205 F.2d 734, at 739 (5th Cir. 1953), cert. denied 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953).

No useful purposes can be served by discussing in detail the various other arguments raised by petitioners. They are all answered sufficiently by *Falsone, Pizzo* and similar cases. Counsel for petitioners, however, have recently submitted a letter calling to my attention United States v. Higgins, 266 F.Supp. 593 (S.D.W.Va.1966). As I read *Higgins*, counsel's reliance on that case is misplaced, principally because the accountant therein involved was also an attorney. More to the point, Chief Judge Field specifically required Higgins to produce his accounting papers and schedules incident to his preparation of tax returns for his clients. Consequently, the rationale of *Higgins* is of no aid to Hayutin. See, generally, Colton v. United States, 306 F.2d 633 (2d Cir. 1962).

The motion to quash the subpoena as modified is denied in all respects. It is so ordered.